UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARTIN DIAZ-AMEZCUA,

              Petitioner,

   v.

WILLIAM BARR, et al.,[1]

              Respondents.

Case No. C19-0001-BJR-MAT

REPORT AND RECOMMENDATION

## I.     INTRODUCTION

Petitioner, a native and citizen of Mexico who is subject to a final order of removal, brings this 28 U.S.C. § 2241 habeas action to obtain a judicial stay of removal until the Board of Immigration Appeals ("BIA") adjudicates his pending motion to reopen his removal proceedings.[2] (Dkts. 1, 7.) The Court temporarily stayed his removal until the issues could be fully briefed.

---

[1] The Clerk is directed to substitute William Barr, U.S. Attorney General, for Matthew Whitaker, former Acting U.S. Attorney General. *See* Fed. R. Civ. P. 25(d).

[2] Petitioner does not expressly articulate an underlying violation of constitutional or federal law (*see* Dkt. 1), but based on the alleged facts, the Court construes his petition as alleging violations of procedural due process and 8 U.S.C. § 1231(b)(3)(A) ("[T]he Attorney General may not remove [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion."). If petitioner disagrees with this construction, he should file an amended habeas petition within seven days of any order adopting this Report and Recommendation.

REPORT AND RECOMMENDATION - 1

(Dkt. 2.) The Government now moves to dismiss for lack of jurisdiction. (Dkt. 4.) Petitioner opposes dismissal. (Dkt. 7.) Neither party addresses the merits.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that the Government's motion to dismiss be DENIED and this action be RE-REFERRED to the undersigned for further proceedings on the merits of petitioner's claims.

## II.   BACKGROUND

In November 2007, the U.S. Department of Homeland Security ("DHS") initiated removal proceedings against petitioner, charging him with entering the United States without being admitted or paroled after inspection by an immigration officer. (Dkt. 5-3.) In August 2009, an immigration judge ("IJ") ordered him removed to Mexico. (Dkt. 5-4.) Petitioner appealed to the BIA, and the BIA remanded for petitioner to apply for voluntary departure. (Dkt. 5-5.)

In August 2011, the IJ ordered petitioner to voluntarily depart the United States. (Dkt. 5-6 at 3.) Petitioner appealed, and the BIA dismissed the appeal and reinstated the period of voluntary departure contingent on petitioner not filing a petition for review. (*Id.* at 5.) Petitioner filed a petition for review, which the Ninth Circuit denied in January 2014. *Diaz-Amezcua v. Holder*, No. 13-70074, Dkt. 15 (9th Cir. Jan. 24, 2014).

DHS took petitioner into custody in August 2014 to effect his removal to Mexico. (Dkt. 5-1 at 6.) On August 24, 2014, petitioner filed a habeas petition in this District to challenge his removal, arguing that he was being unlawfully detained and scheduled for removal without his withholding-only claim being heard. *Diaz-Amezcua*, No. C14-1313-MJP, Dkt. 1 (W.D. Wash. Aug. 24, 2014). The court entered a temporary stay of removal. *Id.* at Dkt. 3. On October 16, 2014, petitioner voluntarily dismissed the action. *Id.* at Dkt. 11. But on December 19, 2014, petitioner again filed an emergency motion to stay his removal and reopen his habeas petition

1  because he had been scheduled again for removal. *Id.* at Dkt. 13. The court entered another temporary stay of removal. *Id.* at Dkt. 14. On January 6, 2015, petitioner filed a motion to reopen seeking asylum and a request to stay removal with the BIA. (Dkt. 5-7 at 3.) Petitioner based his motion on the June 2010 attack on his family in Michoacán, Mexico by a group referred to as the Alcala family, which resulted in the deaths of three Alcala men. (*Id.*; *see also* Dkt. 7-1 at 12.) The Alcala family subsequently succeeded in taking the Amezcua family land to use for drug and criminal activity and has a vendetta against the men in petitioner's family. (*See* Dkt. 7-1 at 12, 15.)

On January 5, 2015, he asked the district court to stay resolution of his motion to reopen his habeas petition pending a decision on his motion to reopen his removal proceedings. *Diaz-Amezcua v. Johnson*, No. C14-1313-MJP, Dkt. 19. DHS opposed petitioner's motions to reopen his habeas proceedings and delay resolution of his case, arguing that the court lacked jurisdiction. *Id.* at Dkt. 20. On January 30, 2015, the court denied petitioner's motions, finding that it did not have jurisdiction to stay his removal, and lifted the temporary stay of removal. *Id.* at Dkt. 22.

While petitioner's motion to reopen his removal proceedings was pending, the Tacoma Immigration Court ordered petitioner's release on $6,000 bond, and DHS released petitioner on February 18, 2015. (Dkt. 5-8.) On March 6, 2015, the BIA denied petitioner's motion to reopen and request for stay of removal, finding that the alleged changed country conditions occurred prior to his final merits hearing in his removal proceedings and therefore could not form the basis for a motion to reopen. (Dkt. 5-7.) Petitioner filed a petition for review in the Ninth Circuit, which stayed his removal pending resolution of his petition. *Diaz-Amezcua v. Sessions*, No. 15-71040, Dkt. 8 (9th Cir. June 29, 2015). On February 23, 2017, the Ninth Circuit denied his petition, and on October 31, 2017, the stay of removal was lifted when the mandate issued. *Id.*, Dkts. 32, 37.

REPORT AND RECOMMENDATION - 3

1    On December 19, 2018, U.S. Border Patrol Agents arrested petitioner in Spokane, Washington, and subsequently transferred him to the Northwest Detention Center so that he could be removed to Mexico on January 2, 2019. (Dkt. 5-1 at 9-10; Dkt. 4 at 6.)

On January 1, 2019, petitioner filed the instant habeas action and emergency request for stay of removal. (Dkt. 1.) Petitioner alleges that he has newly discovered evidence that his life would be endangered if he were removed to Mexico, specifically the June 2018 attempted murder of his cousin in Mexico by members of the Alcala family. (*Id.* at 2-3; Dkt. 7-1 at 12-13.) He claims that he has the statutory right to move to reopen his removal proceedings based on changed conditions in his country and informed the Court that he would be filing a motion to reopen his removal proceedings the following day. (Dkt. 1 at 3.) On January 2, 2019, the Court temporarily stayed his removal and directed that his habeas petition be served. (Dkt. 2.) The Government has moved to dismiss, and that motion is now ripe for review. (*See* Dkts. 4, 7, 9.)

### III.    DISCUSSION

Petitioner seeks a stay of removal pending adjudication of his motion to reopen. (*See* Dkts. 1, 7.) He claims he has a statutory right to move to reopen so that he can seek asylum based on changed country conditions in Mexico. (Dkt. 1 at 3 (citing 8 U.S.C. § 1229a(c)(7)(C)(ii)[3]).) The parties dispute whether Congress stripped the Court of habeas jurisdiction over this claim and, if so, whether the jurisdiction-stripping statute violates the Suspension Clause, as applied to petitioner. As discussed below, the Court concludes Congress divested it of jurisdiction to stay petitioner's removal, but the jurisdiction-stripping statute violates the Suspension Clause in this case. Accordingly, the Court will exercise jurisdiction over this action.

---

[3] Section 1229a(c)(7)(C)(ii) provides: "There is no time limit on the filing of a motion to reopen if the basis of the motion is to apply for [asylum] and is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding."

REPORT AND RECOMMENDATION - 4

A.      Jurisdiction

The Government argues that 8 U.S.C. § 1252(g) bars the Court from staying petitioner's removal, and therefore his habeas petition must be dismissed for lack of subject matter jurisdiction. (Dkt. 4 at 8-10.)  The Court agrees.

Section 1252(g) states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter.

8 U.S.C. § 1252(g).  The Supreme Court has emphasized that this provision "was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion," and applies to only the three discrete listed actions: the commencement of proceedings, adjudication of cases, and execution of removal orders.  *Reno v. Am.-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482, 485 n.9 (1999) ("*AADC*"); *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 840-41 (2018).

The Ninth Circuit has interpreted § 1252(g) narrowly and allowed injunctive relief in certain situations.  *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc) (holding that § 1252(g) did not bar district court from entering permanent injunction prohibiting government from commencing removal proceedings against the plaintiff based on new statutory provisions that the plaintiff claimed did not apply to him, reasoning that the "gravamen" of his claim did not arise from the decision to commence proceedings); *Barahona-Gomez v. Reno*, 236 F.3d 1115, 1120-21 (9th Cir. 2001) (holding that § 1252(g) did not bar issuance of a preliminary injunction restricting the implementation of a directive that had halted the grant of suspensions of deportation); *Catholic Soc. Servs., Inc. v. INS*, 232 F.3d 1139, 1149-50 (9th Cir. 2000) (en banc)

(rejecting claim that § 1252(g) deprived the district court of jurisdiction to enter a preliminary injunction); *Barapind v. Reno*, 225 F.3d 1100, 1109-10 (9th Cir. 2000) (holding that § 1252(g) does not preclude jurisdiction over habeas petition for stay of asylum proceedings); *Walters v. Reno*, 145 F.3d 1032, 1051-52 (9th Cir. 1989) (holding, pre-*AADC*, that district court had jurisdiction to grant permanent injunction prohibiting plaintiffs' removal where plaintiffs brought due process challenge to removal proceedings that did not arise from a decision or action to execute removal orders and was instead a "general collateral challenge[] to unconstitutional practices and policies used by the agency"); *but see Garcia-Herrera v. Asher*, 585 Fed. Appx. 439, 440 (9th Cir. 2014) (unpublished) (holding that challenge to ICE's decision not to delay petitioner's removal pending adjudication of his application for the Deferred Action for Childhood Arrivals program "constitutes a challenge to ICE's decision to execute a removal order" and is barred by § 1252(g)).

The Ninth Circuit, however, has not addressed the issue here: whether district courts have jurisdiction to stay a noncitizen's removal pending resolution of a motion to reopen. District courts in this circuit are split, with a majority concluding that § 1252(g) strips district courts of jurisdiction.[4] *Compare, e.g.*, *Ma v. Holder*, 860 F. Supp. 2d 1048, 1057-60 (C.D. Cal. 2012) (concluding that request for stay of removal pending adjudication of the petitioner's motion to reopen was barred by § 1252(g)); *Em v. Whitaker*, No. 18-4279, 2018 WL 6663437, at *5 (D. Ariz.

---

[4] District courts outside of the Ninth Circuit are also split, with most determining that they do not have jurisdiction. *Compare Hamama v. Adducci*, 258 F. Supp. 3d 828, 834-38 (E.D. Mich. 2017) ("*Hamama I*"), *rev'd on other grounds*, 912 F.3d. 869 (6th Cir. 2018) (concluding that § 1252(g) bars request to stay removal pending motions to reopen); *Nken v. Chertoff*, 559 F. Supp. 2d 32, 36-37 (D.D.C. 2008) (concluding that request for stay was barred by § 1252(g) despite petitioner's argument that stay was necessary to allow constitutional challenge to removal prior to adjudication of his motion to reopen); *Sadhvani v. Chertoff*, 460 F. Supp. 2d 114, 121-24 (D.D.C. 2006) (concluding that court did not have jurisdiction to stay removal pending motion to reopen); *Mingrone v. Adducci*, No. 17-11685, 2017 WL 4909591, at *3 - *4 (E.D. Mich. Jul. 5, 2017) (concluding that court did not have jurisdiction to stay petitioner's removal or consider claim that it is unlawful to remove him while his U visa application was pending); *Ibrahim v. Acosta*, No. 17-24574, 2018 WL 582520, at *4 - *5 (S.D. Fl. Jan. 26, 2018) (following *Hamama I*); *with You v. Nielsen*, 321 F. Supp. 3d 451, 457-58 (S.D.N.Y. 2018) (concluding that court had jurisdiction over claim alleging it was unlawful to remove the petitioner while a motion to reopen was pending).

REPORT AND RECOMMENDATION - 6

Dec. 19, 2018) (same); *Rodriguez-Henriquez v. Asher*, No. 14-1719, 2015 WL 778115, at *4 (W.D. Wash. Feb. 24, 2015) ("Mr. Rodriguez-Henriquez's request that this Court stay the execution of his final order of removal while he [files a motion to reopen] directly impacts the government's ability to 'execute' his removal order and is thus precluded by § 1252(g)."); *Tarhan v. Dep't of Homeland Sec.*, No. 11-1185, 2011 WL 3703375, at *2 (W.D. Wash. Jul. 15, 2011), *R & R adopted*, 2011 WL 3684644 (W.D. Wash. Aug. 23, 2011) ("A request to stay an order of removal based on a pending collateral claim does not escape the jurisdiction stripping provisions of the REAL ID Act." (quoting *Mancho v. Chertoff*, 480 F. Supp. 2d 160, 162 (D.D.C. 2007)); *with Beltran Prado v. Nielsen*, No. 18-1307, Dkt. 15 (W.D. Wash. Feb. 19, 2019) (Report and Recommendation concluding that § 1252(g) did not strip court of jurisdiction because petitioner's claim that he had a due process right to challenge his removal order by filing a motion to reopen did not directly challenge the government's discretionary decision to execute his removal order); *Sied v. Nielsen*, No. 17-6785, 2018 WL 1142202, *14 - *15 (N.D. Cal. Mar. 2, 2018) (adopting reasoning of *Chhoeun v. Marin*, *infra*, and staying execution of removal order pending resolution of petitioner's motion to reopen); *Chhoeun v. Marin*, No. 17-1898, 2018 WL 566821, at *7 - *9 (C.D. Cal. Jan. 25, 2018) (concluding that court had jurisdiction to stay execution of removal order pending petitioners' motions to reopen and reasoning that the Ninth Circuit has "consistently held that district courts have jurisdiction when, as in this case, petitioners do not directly challenge their orders of removal, but rather assert a due process right to challenge the orders in the appropriate court").

The two courts of appeals that have addressed this issue have both held that § 1252(g) deprives district courts of jurisdiction to stay a noncitizen's removal to provide an opportunity to file or have a pending motion to reopen adjudicated. *Hamama v. Adducci*, 912 F.3d 869, 874 (6th

REPORT AND RECOMMENDATION - 7

Cir. 2018) ("*Hamama II*") ("Under a plain reading of the text of the statute, the Attorney General's enforcement of long-standing removal orders falls squarely under the Attorney General's decision to execute removal orders and is not subject to judicial review."); *Sharif v. Ashcroft*, 280 F.3d 786, 787 (7th Cir. 2002) (holding that "a request for a stay of removal 'arises from' the Attorney General's decision . . . to execute a removal order," and rejecting petitioners' argument that they were not challenging the underlying removal order and instead only seeking a stay pending a motion to reopen).

In this case, petitioner's request that the Court stay his removal pending adjudication of his motion to reopen arises from DHS's decision to execute his removal order.  The Court thus agrees with the weight of Circuit and District Court authority that, under the plain meaning of § 1252(g), the Court lacks jurisdiction over petitioner's claims.

B.    Suspension Clause

Petitioner asserts that the Court has jurisdiction under the Suspension Clause. (Dkt. 1 at 5.)  This is an issue of first impression in this District.  The Court agrees with petitioner.

The Suspension Clause provides, "The privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."  U.S. Const. Art. I § 9, cl. 2. The Ninth Circuit recently articulated a two-step framework for analyzing whether a revocation of habeas jurisdiction violates the Suspension Clause, relying primarily on the Supreme Court's decisions in *Boumediene v. Bush*, 553 U.S. 723 (2008), and *INS v. St. Cyr*, 533 U.S. 289 (2001).  *Thuraissigiam v. U.S. Dep't of Homeland Sec.*, 917 F.3d 1097 (9th Cir. 2019) (holding that the Suspension Clause required habeas review of noncitizen's challenge to the procedures leading to his expedited removal order under 8 U.S.C. § 1252(e)(2)).  At the first step, courts must determine whether the Suspension Clause applies to the petitioner, and if so, the

REPORT AND RECOMMENDATION - 8

second step involves determining whether the petitioner has an adequate alternative to habeas that provides a "meaningful opportunity to demonstrate that he is being held pursuant to the 'erroneous application or interpretation' of relevant law." *Id.* at 1112 (quoting *Boumediene*, 553 U.S. at 779). The Court considers each step below.

        1.        *Whether the Suspension Clause applies to petitioner*

First, the Court must examine whether the Suspension Clause applies to the petitioner, focusing on the petitioner's "status." *Id.* at 1107, 1113 (citing *Boumediene*, 553 U.S. at 739). Because petitioner has been in the United States for decades, he may invoke the Suspension Clause. *See id.* at 1113-15 (citing, *inter alia*, *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 262, 268 (1954) (granting habeas relief to a noncitizen who entered from Canada without immigration inspection and without an immigration visa)).

The Government raises an argument that is not directed at petitioner's "status" but is logically considered under *Thuraissigiam*'s first step. The Government asks the Court to follow the Sixth Circuit's recent decision in *Hamama II*, where a divided panel held, *inter alia*, that the Suspension Clause could not be invoked where a noncitizen sought habeas relief in the form of a stay of removal pending adjudication of a motion to reopen. 912 F.3d at 875 ("[T]he type of relief Petitioners seek is not protected by the Suspension Clause."). The court explained, "'At its historical core,' the writ 'served as a means of reviewing the legality of Executive detention,'" *id.* (quoting *St. Cyr*, 533 U.S. at 301), and remedying illegal confinement, *id.* (citing *Munaf v. Geren*, 553 U.S. 674, 693 (2008)). The petitioners, however, did not challenge their detention or seek release from custody. *Id.* Instead, they sought stays of removal. *Id.* The court concluded, "Because the common-law writ could not have granted Petitioners' requested relief, the Suspension Clause is not triggered here." *Id.* at 875-76.

1    Judge White, in dissent, disagreed: "The relief available under habeas corpus is not nearly
2 as narrow as the majority holds." *Id.* at 881. She explained that neither *St. Cyr* nor *Munaf*, the
3 two cases the majority cited, "holds that habeas protections do not include protection from
4 removal." *Id.* at 882. With respect to *St. Cyr*, Judge White explained:

> *St. Cyr* involved "[a noncitizen] subject to a federal removal order," and recognized that the Suspension Clause requires some "judicial intervention in deportation cases." *St. Cyr*, 533 U.S. at 300, 121 S. Ct. 2271 (citing *Heikkila v. Barber*, 345 U.S. 229, 235, 73 S. Ct. 603, 97 L.Ed. 972 (1953)). The *St. Cyr* Court also stated that habeas was "the sole means by which [a noncitizen] could test the legality of his or her deportation order" until the 1952 enactment of the Immigration and Nationality Act. *Id.* at 306, 121 S. Ct. 2271. The Court explained that "even assuming that the Suspension Clause protects only the writ as it existed in 1789, there is substantial evidence to support the proposition that pure questions of law like the one raised by the respondent in this case could have been answered in 1789 by a common-law judge with power to issue the writ of habeas corpus." *Id.* at 304-05, 121 S. Ct. 2271. As a result, the Court reasoned, "[i]t necessarily follows that a serious Suspension Clause issue would be presented" by Congress's withdrawal of habeas review from federal courts without providing an "adequate substitute for its exercise." *Id.* at 305, 121 S. Ct. 2271.

*Id.* at 882. Judge White found that *St. Cyr* was analogous to the case before her:

> Like *St. Cyr*, the present case involves [noncitizens] subject to federal removal orders who seek habeas review on a question of law related to their immigration proceedings, specifically, whether a district court has jurisdiction to stay removal proceedings for [noncitizens] at risk of immediate deportation where the available relief in the immigration courts is not an adequate and effective alternative.

*Id.* The majority had concluded that *St. Cyr* was distinguishable because St. Cyr sought cancellation of removal, which would have entitled him to be released into and remain in the United States, whereas the petitioners sought withholding of removal, which would entitle them *not* to be released into Iraq, the designated removal country. *Id.* at 867. Judge White found that the majority's distinction was not significant: "[T]he point is that protection against deportation was within the core of the writ." *Id.* at 882.

Judge White also explained why *Munaf*, the case the majority found most analogous, was

distinguishable:

> In *Munaf*, the petitioners were U.S. citizens who were arrested by U.S.-led forces in Iraq on terrorism-related charges. The petitioners conceded that they were subject to arrest by the Iraqi government and sought to prevent their transfer to Iraqi custody following an extradition request. *Munaf*, 553 U.S. at 693, 128 S. Ct. 2207. The Court explicitly found that it had jurisdiction over the habeas petitions but noted that the petitioners' requested relief was inappropriate because they were not asking for release from custody, which would "expose them to apprehension by Iraqi authorities for criminal prosecution." *Id.* The Court went on to explain that "habeas is not a means of compelling the United States to harbor fugitives from the criminal justice system of a sovereign with undoubted authority to prosecute them." *Id.* at 697, 128 S. Ct. 2207. Here, Petitioners are not subject to the extradition request of a foreign power and are not seeking habeas that would "shelter them" from government prosecution. Although *Munaf* declined to grant the petitioners the requested relief, the *Munaf* Court did not hold that the writ is unavailable where the petitioner seeks to stay removal proceedings in order to pursue statutory remedies that would grant relief from removal.

*Id.*

Judge White further noted that "the history of the writ includes its application to challenge removal proceedings." *Id.* at 883 ("In their amicus brief, Scholars of Habeas Corpus Law (Scholars) correctly observe that for over a hundred years, courts have recognized that the executive act of removing [a noncitizen] from the country involves the sort of restraint on personal liberty that can properly form the basis of a habeas petition.").

The Court agrees with Judge White that habeas relief is not categorically unavailable for noncitizens who seek stays of removal pending adjudication of motions to reopen. As the Supreme Court in *St. Cyr* explained and Judge White recognized, habeas was the "the sole means by which [a noncitizen] could test the legality of his or her deportation order" until the Immigration and Nationality Act of 1952 ("INA"). *St. Cyr*, 533 U.S. at 306. During this time, immigration habeas petitioners sought and at times were granted stays of deportation. *E.g.*, *Sang Ryup Park v. Barber*, 107 F. Supp. 603, 605 (N.D. Cal. 1952) (granting habeas petition and staying deportation where

REPORT AND RECOMMENDATION - 11

record supported the petitioner's claim that his life would be in danger if he was removed); *Ex Parte Turner*, 10 F.2d 816, 817 (S.D. Cal. 1926) (denying habeas petition seeking stay of deportation because courts may only stay deportation "where the order of deportation is arbitrarily made"). Since then, habeas petitioners have continued to seek and obtain stays of removal. *E.g.*, *Blancada v. Turnage*, 891 F.2d 688, 691 (9th Cir. 1989) (remanding for district court to order stay of deportation pending adjudication of the petitioner's motion to reopen, which involved a nonfrivolous challenge to his deportation order); *Compere v. Nielsen*, 358 F. Supp. 3d 170, 178 n.10 (D.N.H. 2019) ("[A]t least in this circuit, it has long been accepted that a habeas corpus petitioner may seek a stay of removal as a permissible form of habeas corpus relief where the stay is needed to protect the petitioner's rights under federal law.") (citing *Foroglou v. Reno*, 241 F.3d 111, 114 (1st Cir. 2001); *Wallace v. Reno*, 194 F.3d 279, 285 (1st Cir. 1999)). For the reasons Judge White explained, the Supreme Court's decision in *Munaf* did not alter the scope of relief that immigration habeas petitioners may request. *Hamama II*, 912 F.3d at 882 ("*Munaf* explains that the 'typical' habeas remedy is release, but nowhere states that it is the only 'core' habeas remedy."). In sum, petitioner may seek to invoke the Suspension Clause to stay his removal.

2.   *Whether petitioner has an adequate alternative to habeas*

Turning to the second step of the Suspension Clause framework, the Court must consider whether Congress has suspended the writ without an adequate substitute, as applied to petitioner. *Thuraissigiam*, 917 F.3d at 1107, 1116. The Ninth Circuit explained:

> At a minimum, the Suspension Clause "entitles the [petitioner] to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation of relevant law.'" *Boumediene*, 553 U.S. at 779, 128 S. Ct. 2229 (quoting *St. Cyr*, 533 U.S. at 302, 121 S. Ct. 2271).
>
> Congress may modify the scope of habeas review so long as the review "is neither inadequate nor ineffective to test the legality of a person's detention." *Swain v. Pressley*, 430 U.S. 372, 381, 97 S. Ct. 1224, 51 L.Ed.2d 411 (1977); *see Crater v.*

REPORT AND RECOMMENDATION - 12

> *Galaza*, 491 F.3d 1119, 1124-25 (9th Cir. 2007) (noting, in the context of a challenge to AEDPA, that not all restrictions on habeas review effectively suspend the writ). We bear in mind that "[a]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *St. Cyr*, 533 U.S. at 300-01, 121 S. Ct. 2271; *see also Boumediene*, 553 U.S. at 783, 128 S. Ct. 2229 (noting that in cases of executive detention, "the need for habeas corpus is more urgent"). Therefore, when evaluating whether a substitute is adequate, we consider "the rigor of any earlier proceedings" and "the intended duration of the detention and the reasons for it." *Id.* at 781, 783, 128 S. Ct. 2229.

*Id.* at 1116; *see also M. Singh v. Mukasey*, 533 F.3d 1103, 1106 (9th Cir. 2008) (discussing the Suspension Clause in the context of a challenge to the REAL ID Act).

The Government again asks the Court to follow the majority in *Hamama II*, which on this issue held that Congress provided an adequate alternative:

> When Congress stripped the courts of jurisdiction to grant habeas relief under § 1252(g), it provided [noncitizens] with an alternative method to challenge the legality of removal orders: a motion to reopen followed by a petition for review filed in a court of appeals. Because this process provides [a noncitizen] with the same scope of relief as habeas, the REAL ID Act does not violate the Suspension Clause.

*Id.* at 876 (internal citation omitted, alterations added). The court rejected the petitioners' argument that the petition-for-review process was inadequate as applied to them, reasoning that the petitioners had years to file their motions to reopen and that the administrative scheme provided multiple avenues to stay removal while pursuing relief. *Id.* at 876-77.

Judge White again disagreed, concluding that there were good reasons why the petitioners had not previously filed motions to reopen and that the petitioners had not had time to pursue the "multiple avenues" to stay removal. *Id.* at 884-86. Judge White determined that "the petition-for-review process failed to provide a realistic possibility of effective relief" for the petitioners and that "the majority's conclusion that Congress can permissibly render the federal courts impotent

to temporarily stay the executive branch's imminent removal of [noncitizens] to a place where they are likely to be tortured before they have an opportunity to pursue relief based on changed country conditions is contrary to the historical understanding of the writ of habeas corpus and the Suspension Clause." *Id.* at 886.

Several district court judges faced with similar fact patterns have reached the same conclusion as Judge White. *Compere v. Nielsen*, 358 F. Supp. 3d 170, 173, 179 (D.N.H. 2019) (holding that § 1252(g) does not violate the Suspension Clause where noncitizen can continue to litigate motion to reopen after removal, but that the petitioner would be unable to litigate his motion to reopen if he were removed to Haiti, and therefore the Suspension Clause prevented § 1252(g) from stripping district court of habeas jurisdiction); *Devitri v. Cronen*, 289 F. Supp. 3d 287, 294 (D. Mass. 2018) (holding that the BIA's processes for adjudicating motions to reopen and motions to stay were not adequate alternatives to habeas for the petitioners, who sought to file motions to reopen based on changed conditions in Indonesia that occurred after their original removal orders were entered); *Ibrahim v. Acosta*, No. 17-24574, 2018 WL 582520, at *5 - *6 (S.D. Fla. Jan. 26, 2018) (granting habeas petition for stay of removal to class of Somali nationals facing imminent removal, concluding that § 1252(g) "violates the Suspension Clause as applied if it deprives Petitioners of a meaningful opportunity to exercise their statutory right to file motions to reopen their immigration cases," and finding that the petitioners would not be able to effectively pursue motions to reopen from Somalia where they likely would be forced underground to avoid persecution); *Sied v. Nielson*, No. 17- 06785, 2018 WL 1142202, at *25 (N.D. Cal. Mar. 2, 2018) (holding that the motion-to-reopen process "is not a constitutionally adequate substitute process in the facts of this case, where the government can manipulate the process by deporting Mr. Sied before he can be heard, to a country [Eritrea] where he may be tortured or killed").

The Ninth Circuit has held "that a potential motion to reopen at the administrative level and the possibility of judicial review thereafter provides the necessary process to alleviate Suspension Clause concerns." *Iasu v. Smith*, 511 F.3d 881, 893 (9th Cir. 2007). Petitioner exercised his statutory right to file a motion to reopen and sought review in the Ninth Circuit after the BIA denied his motion. Petitioner now has a second motion to reopen pending before the BIA. Even if he is removed while the motion to reopen is pending, he is permitted to continue litigating from abroad. *See Toor v. Lynch*, 789 F.3d 1055 (9th Cir. 2015); *Reyes-Torres v. Holder*, 645 F.3d 1073 (9th Cir. 2011); *Coyte v. Holder*, 593 F.3d 902 (9th Cir. 2010).

Petitioner suggests that this alternative is inadequate as applied to him because his life will be endangered if he is sent to Mexico. In support of this claim, he has submitted the sworn declaration of family members here in Washington who attest that a group in Michoacán, Mexico, referred to as the Alcala family, has a vendetta against petitioner's family and in June 2018, shot and wounded petitioner's cousin in Nayarit, Mexico, where he had moved to avoid the vendetta. (Dkt. 7-1 at 12-13.) The family members state that the Mexican authorities have not prevented the threats of violence from the Alcala family, and that they believe their remaining family members are "carefully hiding and worried about being known, due to the danger." (*Id.*) They believe petitioner will be in grave danger if he is removed to Mexico. (*Id.*) Petitioner also has submitted a 2012 declaration from a judge in Michoacán that petitioner would not be able to live in the village where his family is from because of the violence against his family. (*Id.* at 15.) Finally, petitioner has submitted a 2010 newspaper article discussing the feud between the Amezcua and Alcala families. (*Id.* at 17.)

Other courts have found that the statutorily prescribed motion to reopen and petition-for-review process is an inadequate alternative to habeas where the petitioner has presented evidence

that he or she would be unable to continue to litigate the motion to reopen if removed because of dangerous conditions in the designated removal country. *See Compere*, 358 F. Supp. 3d at 182-83 (finding, based on evidence presented by experts and other witnesses, that it was "more likely than not" that the petitioner would be unable to litigate his motion to reopen, citing the likelihood that the petitioner would be detained for some period of time as soon as he arrives in Haiti, and that after his release, he would "face significant obstacles to effectively litigating his case," including his limited knowledge of creole and the security threats under which he would live when housed with his uncle, who is a "targeted man"); *Devitri*, 289 F. Supp. 3d at 291, 294 (finding that the petitioners proved, by a preponderance of the evidence, that the established procedures were inadequate to protect their rights under asylum law not to be removed to a country where they feared persecution and torture, where expert testified the Indonesian government "will punish those who are 'vocal' and 'assertive' Christians, such as Plaintiffs"); *Ibrahim*, 2018 WL 582520, at *6 (finding that petitioner's evidence regarding changed circumstances in Somalia and the government's failed attempt to remove them to Somalia, which garnered international new coverage, established that "Petitioners cannot effectively pursue motions to reopen from Somalia where they would likely be forced underground to avoid persecution immediately upon arrival); *Sied*, 2018 WL 1142202, at *4 (citing evidence that Eritrean citizens had recently protested against the Eritrean government in the neighborhood the petitioner would live upon removal, and that the Eritrean government had been arbitrarily arresting and holding incommunicado residents of the neighborhood, particularly Jeberti Muslims like the petitioner, and concluding the motion-to-reopen process was an inadequate substitute for the petitioner because he could be tortured or killed upon removal).

      The Court concludes that petitioner has presented sufficient evidence to establish that it is

REPORT AND RECOMMENDATION - 16

more likely than not that he would be unable to litigate his motion to reopen from Mexico due to the danger presented by the Alcala family. The vendetta has continued since 2010 and most recently resulted in a serious attack on petitioner's cousin, who had moved to a different state in an attempt to avoid harm. The Alcala family thus appears willing to pursue petitioner's family members beyond the boundaries of Michoacán. Given that petitioner's remaining family members are hiding from the Alcala family, it appears likely that petitioner would be forced into hiding, as well, which likely would pose a serious obstacle to pursuing his motion to reopen from afar. Based on the evidence in the record, the Court concludes that the motion to reopen process is an inadequate substitute for habeas in this case, and therefore the Suspension Clause requires the Court to assume jurisdiction.

## IV.  CONCLUSION

The Court recommends that the Government's motion to dismiss (Dkt. 4) be DENIED and the matter be RE-REFERRED to the undersigned for further proceedings on the merits of petitioner's claims. The Court also recommends that if petitioner disagrees with the Court's construction of his petition as raising claims under the Due Process Clause and 8 U.S.C. § 1231(b)(3)(A), petitioner be ordered to file an amended habeas petition within seven days of any order adopting this Report and Recommendation. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within

1 **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be

2 ready for consideration by the District Judge on **May 17, 2019**.

3     Dated this 26th day of April, 2019.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 18